**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **TRAVIS WADE BRADEN,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 23-cv-00298-SPM** |
| **CITY OF MARION ILLINOIS,** **TODD HUNTER,** **BENNY VICK,** **JANE AND JOHN DOES,** **AUSTIN HAYNES,** **DENNIS PINKERTON,** **MARILYN REYNOLDS, and** **WILLIAMSON COUNTY JAIL** **EMPLOYEES,** | |
| **Defendants.** | |

## <u>MEMORANDUM AND ORDER</u>

**MCGLYNN, District Judge:**

Plaintiff Travis Braden, an inmate with the Illinois Department of Corrections, filed this action under 42 U.S.C. § 1983 for alleged constitutional deprivations during his pretrial detention at Williamson County Jail. After filing the Complaint, Plaintiff filed a motion with the Court seeking to add exhibits to the Complaint. (Doc. 25). Generally, the Court does not allow piecemeal amendments and supplements to a complaint. An amended complaint supersedes and replaces the original complaint and renders the original void. *See Flannery v. Recording Indus. Ass'n of Am*., 354 F.3d 632, 638 n. 1 (7th Cir. 2004). However, as a onetime courtesy, the Court will allow Plaintiff to amend his Complaint to add exhibits. The motion to supplement is **GRANTED**. (Doc. 25). Going forward, Plaintiff is advised that an amended complaint must stand on its own and include all allegations against all defendants and any exhibits. Any attempts to file piecemeal addendums, supplements, notices that include additional allegations, or amendments will be

Page 1 of 15

stricken.

This case is now before the Court for screening of the Complaint (Doc. 1) under 28 U.S.C.

§ 1915A. Any portion of the Complaint that is legally frivolous or malicious, fails to state a claim

for relief, or requests money damages from an immune defendant must be dismissed. *Id.*

COMPLAINT

Plaintiff alleges that from April 23, 2022, through May 17, 2022, he was held as a pretrial

detainee at Williamson County Jail. (Doc. 1, p. 9). After being placed in general population,

Plaintiff informed guards, John Doe 1 and John Doe 2, that he was feeling suicidal and asked "what

could be done about speaking with a psychological physician." One of the guards told Plaintiff

that "they do not have any policies or procedures for that except to place [Plaintiff] in a suicide

cell." (*Id.*).

The next day, Plaintiff stopped two guards, John Doe 3 and John Doe 4, and swallowed a

six-inch e-cigarette containing a lithium battery in front of them. (Doc. 1, p. 9). The guards left

laughing, and then came back and took Plaintiff to the "drunk tank cell." Plaintiff repeatedly asked

to go to a hospital and to be seen by medical staff but was told no. Plaintiff was told he would stay

in the cell until he passed the e-cigarette through normal digestion. The cell did not have a sink for

water, an elevated bed, or a mattress. (*Id.* at p. 11). There was no toilet in the cell, and he had to

be escorted through the lobby when he had to use the restroom or shower. (*Id.* at p. 17). Plaintiff

was only provided a suicide blanket. (*Id.* at 11). Plaintiff remained in the isolation cell until May

17, 2022. (*Id.*).

After a week in isolation, Plaintiff observed blood in his stool and showed the guards. (Doc.

1, p. 9). Plaintiff continued to be refused access to medical care and was not allowed to talk to

anyone or file grievances. Plaintiff states he became "very afraid for [his] life and [his] health,"

and so he then swallowed a small clip he took from a restraint chair strap when he returned from

Page 2 of 15

the shower. (*Id.*). Plaintiff believed that after swallowing another item he would be taken to the hospital. (*Id.* at p. 10). However, he was again laughed at and placed into the restraint chair in his cell. Jail Administrator Todd Hunter, Lieutenant Dennis Pinkerton, Sheriff Benny Vick, Correctional Officer Austin Haynes, and other staff members crowded outside Plaintiff's cell and discussed a "punishment exercise for [his] behavior." Plaintiff was placed in the restraint chair on a Friday, and Haynes told Plaintiff that as a punishment exercise he would not be released from the restraint chair until Monday, when Hunter returned to work. (*Id.*).

Plaintiff states that his cousin and Haynes "have a very close relationship," and so, Plaintiff made a "few homosexual remarks" about Haynes and his cousin in front of several staff members. (Doc. 1, p. 10). Haynes became furious and left the cell. Haynes later returned to check the restraints on the chair. Then before leaving, Haynes rubbed oleoresin capsicum ("OC spray"), the pepper spray substance, all over Plaintiff's face. Another guard, John Doe 5, grabbed Plaintiff's finger and "pushed it all the way backward in an attempt to break [his] finger." (*Id.*). Plaintiff asked for medical attention and to be able to wash his face and was denied. (*Id.* at p. 11). Over the weekend, Plaintiff was only allowed out of the restraints a handful of times for no longer than three minutes each time. (*Id.*). On Monday, Hunter came to the cell and released Plaintiff from the restraint chair. (Doc. 1, p. 11). Hunter told Plaintiff that if Plaintiff did anything further, he would be placed back in the chair.

At some point, Plaintiff saw a friend, Jeffrey Watkins, who had posted bail and was leaving the jail. Plaintiff asked Watkins to notify his family that he was being denied medical treatment and had been assaulted. (Doc. 1, p. 11). The next evening, after three weeks of being denied medical care, an x-ray was taken. (*Id.*). The following day, Hunter came to Plaintiff's cell and told him he was being given recognizance bail. (*Id.* at p. 12). Hunter said he had orders to take him to Marion Hospital. Two guards then took Plaintiff to the hospital and in the parking lot told Plaintiff

"to get medical help." Plaintiff asserts that he received medical treatment because Watkins called the jail and threatened lawsuits. (*Id.*).

PRELIMINARY DISMISSALS

Plaintiff names as defendants Jane and John Does, described as correctional staff employees at Williamson County Jail and Sheriff's Office, and Williamson County Jail Employees, described as correctional staff and medical staff. While Plaintiff may use "John Doe" or "Jane Doe" to refer to parties whose names are unknown, he must still follow Federal Rule of Civil Procedure 8 pleading standards and include a short, plain statement of the case against that individual. Simply stating that a group of staff harmed him without providing more, is not sufficient to state a claim under the federal pleading standards. *See* FED. R. CIV. P. 8; *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (finding the phrase "one or more of the Defendants" did not adequately connect specific defendants to illegal acts, and thus failed to adequately plead personal involvement). Plaintiff describes the conduct of John Does 1, 2, 3, 4, and 5 in the statement of claim, and therefore, the Clerk of Court will be directed to add these individual defendants to the docket. He does not, however, identify particular acts or omissions by any other unknown individual who allegedly violated his constitutional rights. All claims against Jane and John Does and Williamson County Jail Employees are, therefore, dismissed. This includes the failure to protect claim against "Defendants John Does" and "staff" as articulated on page 20.

The Court further dismisses the failure to protect claim asserted against Hunter and Pinkerton. (Doc. 1, p. 20). Plaintiff states that Hunter and Pinkerton colluded with Haynes to assault him. The Court assumes that Plaintiff is attempting to hold Hunter and Pinkerton liable for when Haynes rubbed OC spray on his face. This allegation is conclusory, and not supported by any factual details regarding the involvement of Hunter and Pinkerton in the OC incident. (*See Id.* at p. 10).

Page 4 of 15

The Court also dismisses all claims against Marilyn Reynolds. Reynolds is described as a nurse at Williamson County Jail. (Doc. 1, p. 3). Plaintiff's claims that she acted with deliberate indifference by not ensuring he was provided medical care and subjected him to excessive force and unlawful restraint by placing him in the restraint chair are conclusory. (*Id.* at p. 14-15). Plaintiff does not include any factual allegations against her in the statement of claim or describe her conduct or involvement in the alleged constitutional violations anywhere in the Complaint. While detailed factual allegations are not required under Federal Rule of Civil Procedure 8, Plaintiff must plead more than he has here, which is essentially "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). For these reasons, Reynolds will be dismissed without prejudice.

## DISCUSSION

Based on the allegations of the Complaint and Plaintiff's articulation of his claims, the Court finds it convenient to designate the following counts:

> **Count 1:**     Fourteenth Amendment claim against John Does 1 and 2 for knowing that Plaintiff was feeling suicidal and failing to take reasonable care to mitigate the risk and protect him from self-harm.
>
> **Count 2:**     Fourteenth Amendment claim against John Doe 3, John Doe 4, Hunter, Pinkerton, Haynes, and Vick for failing to ensure Plaintiff received medical care after he ingested an e-cigarette.
>
> **Count 3:**     Fourteenth Amendment claim against Hunter, Pinkerton, Haynes, and Vick for failing to ensure Plaintiff received medical care after he swallowed a metal clip.
>
> **Count 4:**     Fourteenth Amendment claim against Hunter, Pinkerton, Haynes, and Vick for the use of excessive force by placing Plaintiff in a restraint chair.
>
> **Count 5:**     Fourteenth Amendment claim against Haynes for putting oleoresin capsicum on Plaintiff's face.

**Count 6:**    Fourteenth Amendment claim against John Doe 5 for injuring Plaintiff's finger.

**Count 7:**    Fourteenth Amendment claim against Hunter, Pinkerton, Haynes, and Vick for failing to ensure Plaintiff received medical care after Haynes rubbed oleoresin capsicum on Plaintiff's face.

**Count 8:**    Fourteenth Amendment claim against Hunter, Pinkerton, Haynes, and Vick for denying Plaintiff mental health treatment.

**Count 9:**    Fourteenth Amendment claim against the City of Marion pursuant to *Monell*.

**Count 10:**    Failure to train, supervise, and discipline against Vick, Hunter, and Pinkerton.

**Count 11:**    Claim against Defendants for interfering with Plaintiff's right to remedy.

**Count 12:**    Illinois state law claim of assault and battery claim against Haynes for putting oleoresin capsicum on Plaintiff's face.

**Count 13:**    Illinois state law claim of intentional infliction of emotional distress against Haynes for rubbing oleoresin capsicum on Plaintiff's face.

**Count 14:**    Illinois state law claim of negligent infliction of emotional distress against Haynes for rubbing oleoresin capsicum on Plaintiff's face.

**Count 15:**    Illinois state law claim of assault and battery claim against John Doe 5 for injuring Plaintiff's finger.

**Count 16:**    Illinois state law claim of intentional infliction of emotional distress against John Doe 5 for injuring Plaintiff's finger.

**Count 17:**    Illinois state law claim of negligent infliction of emotional distress against John Doe 5 for injuring Plaintiff's finger.

**Count 18:**    Illinois state law claim against Defendants for intentional infliction of emotional distress for placing Plaintiff in a restraint chair for an excessive period of time.

**Count 19:**    Illinois state law claim of negligent infliction of emotional distress against Defendants for placing Plaintiff in a restraint

chair for an excessive period of time.

**Count 20:**   Illinois state law claim of willful and wanton misconduct against Defendants for placing Plaintiff in a restraint chair as punishment.

**Count 21:**   Illinois state law claim of willful and wanton misconduct against Defendants for refusing Plaintiff medical treatment.

**Count 22:**   Illinois state law claim of willful and wanton misconduct against Haynes and John Doe 5 for assaulting Plaintiff.

**Count 23:**   Illinois state law claim against Defendants for medical negligence.

The parties and the Court will use these designations in all future pleadings and orders, unless

**Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[1] pleading standard.**

### Counts 1-8

Although it appears Plaintiff is attempting to bring his claims under the Eighth Amendment, Counts 1 through 8 implicate the Fourteenth Amendment Due Process Clause, which protects pretrial detainees from all forms of punishment. *See Kingsley v. Henderson*, 576 U.S. 389 (2015) (Fourteenth Amendment excessive force claim); *Miranda v. County of Lake*, 900 F.3d 335 (7th Cir. 2018) (Fourteenth Amendment medical care claim).

Jail conditions violate the Fourteenth Amendment when they deprive a pretrial detainee of basic human needs, such as food, water, medical care, and safety. *Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019). To state a claim in this context, a pretrial detainee must plausibly allege that each defendant acted "purposefully, knowingly, or perhaps even recklessly" in relation to a risk—in this case, the risk of self-harm and denial of medical and mental health care—and that each defendant's conduct was also objectively unreasonable. *See Ferguson v. Cook Cnty. Corr'l*

---

[1] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

*Facility/Cermak*, 836 F. App'x 438, 441 (7th Cir. 2020) (citing *Miranda*, 900 F.3d at 353). Likewise, to establish an excessive force claim under the Fourteenth Amendment, the plaintiff must show that "the force purposefully or knowingly used against him was objectively unreasonable." *Kingsley,* 576 U.S. at 396-97.

The Court finds that Plaintiff has sufficiently pled Fourteenth Amendment violations in Counts 1-8, and they survive preliminary review.

### Count 9

Plaintiff asserts a *Monell* claim against the City of Marion. He alleges that the City of Marion using systemic conditions and policies caused "deliberate indifference, negligent infliction of emotional distress, failure to train, failure to protect, failure to supervise, denial of mental health treatment, unlawful restraint, and excessive force." (Doc. 1, p. 17). Specifically, Plaintiff states that Williamson County Jail does not have any mental health care providers on staff, inadequate staffing, and the staff does not have mental health care training. As a result, inmates with serious mental healthcare needs are not properly identified and assessed during intake by personnel. (*Id.*). Plaintiff also claims that "punishment exercises" are used at Williamson County Jail to punish those who inflict self-harm. (*Id.* at p. 18). There is a custom and practice on the part of staff to use the restraint chair as a punishment tool.

An entity can face *Monell* liability when: (1) it has "an express policy that causes a constitutional deprivation when enforced;" (2) it has "a widespread practice that is so permanent and well-settled that it constitutes a custom or practice;" or (3) "a person with final policymaking authority" is responsible for the constitutional injury. *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 986 (7th Cir. 2021).

Plaintiff cannot proceed on his *Monell* claim against the City of Marion because the Williamson County Jail is not operated under the authority of the City. Thus, Count 9 is dismissed against the City

of Marion.

Defendants, however, are named in both their official and individual capacities. When a plaintiff sues an individual officer in his official capacity, the official capacity claim generally represents "another way of pleading an action against an entity of which the officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell*, 436 U.S. at 690 n. 55). The official capacity suit is not against the individual himself, but rather the entity. *Id*. at 166. Plaintiff has sufficiently stated he was denied proper medical treatment for his mental health needs because Williamson County Jail lacked proper policies to assess and respond to individuals with mental health conditions. To support this claim, Plaintiff alleges that when he asked John Does 1 and 2 to speak with someone about feeling suicidal, they told him that the only option was placement in a suicide cell. (Doc. 1, p. 9). "They do not have any policies or procedures for that." (*Id.*). As it is not clear what entity controls the Williamson County Jail and the policies implemented, Count 9 will proceed against Hunter, the jail administrator, and Vick, the Williamson County Sheriff, in their official capacities for policies that resulted in Plaintiff being denied proper mental health treatment. The official capacity claims are dismissed as to the other defendants as duplicative of the official capacity claims against Hunter and Vick.

The Court will dismiss the *Monell* claim to the extent Plaintiff claims that Williamson County Jail had insufficient numbers of staff and had systemic practices of implementing "punishment exercises" against inmates who self-harm. Plaintiff has not provided any facts to support the contention that Williamson County Jail had an inadequate number of staff, and he does not connect low staffing to the alleged constitutional deprivations. As for the systemic practice of punishing inmates who self-harm by placing them in the restraint chair, Plaintiff only tells of his experience. For a custom or unwritten policy to be "widespread" more than a single instance of misconduct is required. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010). *See also Thomas v. Neenah Joint Sch. Dist.* 74 F. 4th 521, 524 (7th Cir. 2023). There are no details in the Complaint from which the

Page 9 of 15

Court can infer that placing Plaintiff in the restrain chair as punishment was "so widespread so as to constitute a governmental custom." *See Gill v. City of Milwaukee,* 850 F. 3d 335, 344 (7th Cir. 2017).

### Count 10

Plaintiff alleges that Vick, Hunter, and Pinkerton failed to train, supervise, and discipline employees. (Doc. 1, p. 21). He states that when Defendants became aware that Plaintiff requested mental health care, they refused to provide it, and they did not discipline Haynes for rubbing OC spray on Plaintiff's face or John Doe 5 for injuring his finger.

Count 10 is dismissed. The allegation that Defendants failed to provide mental health care is redundant of Count 8. Furthermore, failing to discipline Haynes and John Doe 5 after they assaulted Plaintiff, "would have done nothing to prevent [the assaults] or lessen the severity of the consequences." *Lamer v. Holder*, 18-cv-1706-SMY, 2019 WL 570604, at *3 (S.D. Ill. Feb. 11, 2019). There is no recognized constitutional right of an individual to have a jail officer disciplined. *Id.* Finally, Plaintiff's claim that Defendants failed to train staff is conclusory. There is nothing in the Complaint suggesting that the individual defendants had knowledge of repeated or ongoing unconstitutional conduct by staff and intentionally decided not to address it with training. *See Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013).

### Count 11

Plaintiff asserts that Defendants "exercised interference with right to remedy when Plaintiff was refused to submit any grievance form request while in custody." (Doc. 1, p. 21).

"The Constitution does not require that a prison provide a formal grievance procedure nor adhere to their own procedures if they establish one. The violation of prison policy does not [in and of itself] state a claim under §1983." *Shidler v. Moore,* 409 F. Supp. 2d 1060, 1070 (N.D. Ind. Jan. 3, 2006). *See also Owens v. Hinsley,* 635 F. 3d 950, 953-54 (7th Cir. 2011). Accordingly,

there is no constitutional claim for denying Plaintiff access to the grievance process, and Count 11 is dismissed.

## State Law Claims: Counts 12-23

Plaintiff seeks to bring state law claims against all Defendants. When a district court has original jurisdiction over a civil action, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 936 (7th Cir. 2008). As Plaintiff's allegations of negligence, assault and battery, and infliction of emotional distress all derive from the same facts as his Fourteenth Amendment claims, the Court will exercise supplemental jurisdiction over the state law claims.

Counts 12-17 will proceed as pled.

Counts 18, 19, and 20 will proceed as to Defendants Hunter, Vick, Haynes, and Pinkerton, as they were the defendants described as being involved in placing Plaintiff in the restraint chair, and these counts are dismissed as to the other defendants.

Count 21 will proceed against Defendants Hunter, Vick, Haynes, Pinkerton, and John Does 3 and 4 for refusing Plaintiff medical treatment and is dismissed as to the other defendants.

Count 22 will proceed as pled.

Count 23 is dismissed with prejudice. An Illinois medical negligence claim requires the plaintiff to show, "(1) the standard of care in the medical community by which the physician's treatment was measured; (2) that the physician deviated from the standard of care; and (3) that a resulting injury was proximately caused by the deviation from the standard of care." *Johnson v. Ingalls Mem'l Hosp.,* 931 N.E. 2d 835, 847 (Ill. App. Ct. 2010). None of the defendants are medical professionals, and Plaintiff cannot proceed on a medical negligence claim against them.

### UNIDENTIFIED DEFENDANTS

Plaintiff will have the opportunity to engage in limited discovery to ascertain the identity of the John Doe Defendants. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, Hunter and Vick are already named as parties, and they shall respond to discovery aimed at identifying these unknown defendants. Guidelines for discovery will be set in a separate order. Once the name of the unknown defendant is discovered, Plaintiff shall file a motion to substitute the newly identified defendant in place of the generic designation in the case caption and throughout the Complaint.

### MOTION FOR COPIES

Plaintiff seeks a copy of his Complaint. (Doc. 24). The motion is **DENIED**. The District Clerk will mail paper copies of any document only after receiving prepayment of the required fee (i.e., $.50 per page). A request for documents should be made in writing to the Clerk of Court by referring to the case number and the document number and submitting the required prepayment. The fee for Plaintiff's 28-page complaint is $14.00. Upon receipt of this payment, the requested copies shall be mailed to Plaintiff via regular mail.

### DISPOSITION

For the reasons stated above, the Complaint survives preliminary review pursuant to Section 1915A. The Clerk is **DIRECTED** to add John Does 1, 2, 3, 4, and 5 to the docket as defendants.

**COUNT 1** shall proceed against John Doe 1 and John Doe 2. **COUNT 2** shall proceed against John Doe 3, John Doe 4, Hunter, Pinkerton, Haynes, and Vick. **COUNTS 3** and **4** shall proceed against Hunter, Pinkerton, Haynes, and Vick. **COUNT 5** will proceed against Haynes. **COUNT 6** will proceed against John Doe 5. **COUNTS 7** and **8** will proceed against Hunter, Pinkerton, Haynes, and Vick. **COUNT 9** will proceed against Vick and Hunter in their official

capacities only and is **DISMISSED** against the other defendants, including the City of Marion. **COUNTS 10** and **11** are **DISMISSED. COUNTS 12, 13,** and **14** will proceed against Haynes. **COUNTS 15, 16,** and **17** will proceed against John Doe 5. **COUNTS 18, 19,** and **20** will proceed against Hunter, Pinkerton, Haynes, and Vick and are dismissed without prejudice as to the other defendants. **COUNT 21** will proceed against Hunter, Pinkerton, Haynes, and Vick and is dismissed without prejudice as to the other defendants. **COUNT 22** will proceed against Haynes and John Doe 5. **COUNT 23** is **DISMISSED with prejudice.**

Because there are no surviving claims against the City of Marion, Jane and John Does, Marilyn Reynolds, and Williamson County Jail Employees, they are **DISMISSED** from this case and the Clerk is **DIRECTED** to **TERMINATE** them as parties on the docket.

The motion to supplement is **GRANTED.** (Doc. 25). The Clerk is **DIRECTED** to file pages 5- 43 of Doc. 25 as Exhibits to the Complaint (Doc. 1).

Because Plaintiff's claims involve his medical care, the Clerk is further **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

The Clerk of Court **SHALL** prepare for **Hunter, Vick, Haynes, Pinkerton,** and **John Does 1-5** (once identified) the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to defendants' place of employment. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the defendant, and the Court will require the defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants should respond to the issues stated in this Merit Review Order.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than 7 days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED:   November 7, 2023**

_s/Stephen P. McGlynn_
**STEPHEN P. MCGLYNN**
**United States District Judge**

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.