## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

TRAVIS WADE BRADEN,

               **Plaintiff,**

v.

TODD HUNTER, *et al.*,

               **Defendants.**

Case No. 23-cv-00298-SPM

## MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

This matter is before the Court on a Motion for Leave to File Amended Complaint filed by pro se Plaintiff Travis Braden. (Doc. 69). Federal Rule of Civil Procedure 15(a) provides that a party may amend a pleading and that leave to amend should be freely given "when justice so requires." The Seventh Circuit maintains a liberal attitude toward the amendment of pleadings "so that cases may be decided on the merits and not on the basis of technicalities." *Stern v. U.S. Gypsum, Inc.*, 547 F.2d 1329, 1334 (7th Cir. 1977). Plaintiff's motion is timely filed[1] and will not prejudice Defendants, as merits discovery has not commenced. Thus, the Court **GRANTS** the Motion for Leave to File Amended Complaint. (Doc. 69).

The Amended Complaint, however, is still subject to review under 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the

---

[1] The Motion for Extension of Time to File Amended Complaint is **GRANTED**. (Doc. 66). The Court finds the Motion for Leave to File an Amended Complaint, along with the proposed amended complaint, timely filed. (Doc. 68, 69).

factual allegations of the pro se complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## THE AMENDED COMPLAINT

The facts pled in the Amended Complaint are very similar to what is alleged in the original Complaint. Plaintiff states that from April 23, 2022, through May 17, 2022, he was held as a pretrial detainee at Williamson County Jail. (Doc. 68, p. 9). After being placed in general population, Plaintiff informed by Correctional Officer Kaleb Crompton and an unknown officer, that he was feeling suicidal and asked, "what could be done about speaking with a psychological physician." Crompton told Plaintiff that "they do not have any policies or procedures for that except to place [Plaintiff] in a suicide cell." (*Id.*).

A few days later, Plaintiff stopped Correctional Officer Shawn Freeman and another unknown officer and swallowed a six-inch e-cigarette containing a lithium battery in front of them. (Doc. 68, p. 9). The officers left laughing, and then came back and took Plaintiff to the "drunk tank cell." Plaintiff repeatedly asked to go to a hospital and to be seen by medical staff but was told no. Plaintiff was told he would stay in the cell until he passed the e-cigarette through normal digestion. (*Id.*). He continued to ask for medical and mental health help and filed grievances, but his requests were denied. (*Id.* at p. 10).

After a week in isolation, Plaintiff observed blood in his stool and showed the guards. (Doc. 68, p. 10). Plaintiff continued to be refused access to medical care and was not allowed to talk to anyone or file grievances. Plaintiff states he became "very afraid for [his] life and [his] health," and so he then swallowed a small clip he took from a restraint chair strap when he returned from the shower. (*Id.*). Plaintiff believed that if he swallowed another item, then he would be taken to the hospital. (*Id.* at p. 11). However, he was laughed at again and placed into a restraint chair located in his cell. Jail Administrator Todd Hunter, Lieutenant Dennis Pinkerton, Sheriff Benny

Vick, Correctional Officer Austin Haynes, and other staff members crowded outside Plaintiff's cell and discussed a "punishment exercise for [his] behavior." (*Id.*).

Plaintiff was placed in the restraint chair on a Friday, and Haynes told Plaintiff that as a punishment exercise, he would not be released from the restraint chair until Monday, when Hunter returned to work. (Doc. 68, p. 11). Plaintiff states that his cousin and Haynes "have a very close relationship," and so, Plaintiff made a "few homosexual remarks" about Haynes and Plaintiff's cousin in front of several staff members. Haynes became furious and left the cell. (*Id.*). Haynes later returned to check the restraints on the chair. (*Id.* at p. 12). Then before leaving, Haynes rubbed oleoresin capsicum ("OC spray"), all over Plaintiff's face. Another guard, grabbed Plaintiff's finger and "pushed it all the way backward in an attempt to break [his] finger." Plaintiff asked for medical attention and to be able to wash his face. His requests were denied. (*Id.*).

Over the weekend, Plaintiff was only allowed out of the restraints a handful of times for no longer than three minutes each time. (Doc. 68, p. 13). He was not provided medical treatment or exams by Nurse Marilyn Reynolds during this seventy-two-hour period. On Monday, Hunter came to the cell and released Plaintiff from the restraint chair. Hunter told Plaintiff that if Plaintiff did anything further, he would be placed back in the chair. (*Id.*).

At some point, Plaintiff saw a friend, Jeffrey Watkins, who had posted bail and was leaving the jail. (Doc. 68, p. 13). Plaintiff asked Watkins to notify his family that he was being denied medical treatment and had been assaulted. (*Id.*). The next evening, after three weeks of being denied medical care, an x-ray was taken. (*Id.* at p. 14). The following day, Hunter came to Plaintiff's cell and told him he was being given recognizance bail. Hunter said he had orders to take him to Marion Hospital. Two guards then took Plaintiff to the hospital and in the parking lot told Plaintiff "to get medical help." Plaintiff asserts that he received medical treatment because Watkins called the jail and threatened lawsuits. (*Id.*).

**PRELIMINARY DISMISSAL**

The Court again finds that Plaintiff has failed to state a claim against Nurse Reynolds. The only factual allegation against Nurse Reynolds in the Amended Complaint is that she "never provided medical [treatment] or exams while in a 72 hour restraint." (Doc. 68, p. 13). This single statement is not sufficient for the Court to plausibly infer that Reynolds was personally involved in any of the alleged constitutional violations, was aware of Plaintiff's circumstances, and acted "purposefully, knowingly, or perhaps even recklessly" with respect to the risk of harm to him. *Gonzalez v. McHenry Cnty., Ill.,* 40 F 4 824, 828 (7th Cir. 2022) (quoting *Maranda v. Cnty. of Lake,* 900 F. 3d 335, 353-54 (7th Cir. 2018)). Plaintiff's allegations against Reynolds are conclusory, and therefore will be dismissed.

**DISCUSSION**

Based on the allegations of the Amended Complaint and Plaintiff's articulation of his claims, the Court finds it convenient to redesignate the counts as follows:

| | |
|---|---|
| **Count 1:** | Fourteenth Amendment claim against Crompton for knowing that Plaintiff was feeling suicidal and failing to take reasonable care to mitigate the risk and protect him from self-harm. |
| **Count 2:** | Fourteenth Amendment claim against Freeman, Hunter, Pinkerton, Haynes, and Vick for failing to ensure Plaintiff received medical care after he ingested an e-cigarette. |
| **Count 3:** | Fourteenth Amendment claim against Hunter, Pinkerton, Haynes, and Vick for failing to ensure Plaintiff received medical care after he swallowed a metal clip. |
| **Count 4:** | Fourteenth Amendment claim against Haynes for putting oleoresin capsicum on Plaintiff's face. |
| **Count 5:** | Fourteenth Amendment claim against Hunter, Pinkerton, Haynes, and Vick for failing to ensure Plaintiff received medical care after Haynes rubbed oleoresin capsicum on Plaintiff's face. |

**Count 6:**    Fourteenth Amendment claim against Hunter, Pinkerton, and Vick for denying Plaintiff mental health treatment.

**Count 7:**    Fourteenth Amendment claim against Hunter, Pinkerton, Haynes, and Vick for the use of excessive force by placing Plaintiff in a restraint chair for around seventy-two hours.

**Count 8:**    Fourteenth Amendment claim against Hunter and Vick pursuant to *Monell*.

**Count 9:**    Fourteenth Amendment claim against Hunter, Vick, and Pinkerton for housing Plaintiff in unconstitutional conditions of confinement.

**Count 10**:    ADA/RA claim for failing to accommodate Plaintiff's serious mental health illness.

**Count 11:**    Illinois state law claim of intentional infliction of emotional distress against Haynes for rubbing oleoresin capsicum on Plaintiff's face.

**Count 12:**    Illinois state law claim of assault and battery claim against Haynes for putting oleoresin capsicum on Plaintiff's face.

**Count 13:**    Illinois state law claim of negligent infliction of emotional distress against Haynes for rubbing oleoresin capsicum on Plaintiff's face.

**Count 14:**    Illinois state law claim of willful and wanton misconduct against Haynes for assaulting Plaintiff.

**Count 15:**    Illinois state law claim of negligent infliction of emotional distress against Hunter, Vick, Haynes, and Pinkerton for placing Plaintiff in a restraint chair for an excessive period of time.

**Count 16:**    Illinois state law claim of willful and wanton misconduct against Hunter, Vick, Haynes, and Pinkerton for placing Plaintiff in a restraint chair as a form of punishment.

**Count 17:**    Illinois state law claim against Hunter, Vick, Haynes, and Pinkerton for intentional infliction of emotional distress for placing Plaintiff in a restraint chair for an excessive period of time.

**Count 18:**    Illinois state law claim of willful and wanton misconduct against Hunter, Vick, Haynes, Pinkerton, and Freeman for

refusing Plaintiff medical treatment.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[2] pleading standard.**

### Counts 1-7

For the reasons stated in the original Merit Review Order (Doc. 26), the Court finds that Plaintiff has stated a constitutional claim in Counts 1-7,[3] as pled. *See Kingsley v. Henderson*, 576 U.S. 389 (2015) (Fourteenth Amendment excessive force claim); *Miranda v. County of Lak*e, 900 F.3d 335 (7th Cir. 2018) (Fourteenth Amendment medical care claim).

### Count 8

Count 8 will proceed against Hunter, the jail administrator, and Vick, the Williamson County Sheriff, in their official capacities, for policies or lack thereof that resulted in Plaintiff being denied proper mental health treatment. (*See* Doc. 26, p. 9).

### Count 9

Plaintiff asserts that while he was at the Williamson County Jail, from April 30, 2022, after he swallowed the e-cigarette, until May 17, 2022, he was placed in the "drunk tank cell" in unconstitutional conditions. (Doc. 68, p. 9, 42-44, 61). He states that (1) the cell was not designed for long term use; (2) the cell had no water source; (3) there was a center drain in the cell that he was expected to use as a toilet, and it contained human waste; (4) he was without a mattress or elevated bed and denied bedding; and (5) the cell was constantly illuminated. Plaintiff alleges that he was only given a smock to wear and a single blanket and refused any recreational activities,

---

[2] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).
[3] Count 4 was previously Count 5; Count 5 was previously Count 7; Count 6 was previously Count 8; and Count 7 was previously Count 4. (*See* Doc. 26, p. 5-6).

such as the ability to watch television and participation in any programs.

Plaintiff's allegations that his conditions were unconstitutional are analyzed under the Fourteenth Amendment. To plead a Fourteenth Amendment claim, Plaintiff must assert that the conditions posed "an objectively serious threat to his health; that the [defendant's] response was objectively unreasonable under the circumstances; and that [the defendant] acted purposely, knowingly, or recklessly with respect to the consequences of [his] actions." *Mays v. Emanuele*, 853 F. App'x 25, 27 (7th Cir. 2021) (citing *Hardeman v. Curran*, 933 F.3d 823, 827 (7th Cir. 2019); *Miranda v. Cnty. of Lake*, 900 F.3d 335, 353−54 (7th Cir. 2018)). When determining whether a condition is objectively serious, the Court considers the totality of the circumstances, including "the duration and severity" of the plaintiff's exposure to the alleged unconstitutional conditions. *Hardeman,* 933 F. 3d at 824. That being said, generally, "conditions of confinement cannot be aggregated and considered in combination unless they have a mutually enforcing effect that produces the deprivation of a single, identifiable need..." *Johnson v. Prentice*, 29 F.4th 895, 904 (7th Cir. 2022) (internal quotation marks and citation omitted).

Count 9 will proceed in part and is dismissed in part. The Court finds that forcing Plaintiff to sleep on a concrete floor, without any type of mattress, while the cell was illuminated for 24 hours a day preventing him from obtaining adequate sleep pleads a claim for unconstitutional conditions of confinement. *See Brown v. Gulash,* No. 07-cv-JPG-PMF, 2011 WL 1085637, at *8 (S.D. Ill. Mar. 22, 2011) (observing that sleep is "one of the 'minimal civilized measure of life's necessities'" (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981))). Plaintiff's cell conditions also could violate the constitution due to the alleged fact that Plaintiff had to use a drain in the middle of the floor as the only bathroom, and he was in close proximity to and exposed to human waste. (Doc. 68, p. 13, 43).

Count 9 is dismissed as to the allegations that Plaintiff did not have running water in his

cell. Standing alone, the "lack of running water in an inmate's cell is not a constitutional violation." *Williams v. Collins,* No. 14 C 5275, 2015 WL 4572311, at *3 (N.D. Ill. 2015) (citations omitted).

The Court also dismisses Count 9 to the extent that Plaintiff states the cell reached "low temperatures," and he was only allowed to wear a smock and was given a single blanket. (*See* Doc. 68, p. 12). Because Plaintiff claims that he had attempted self-harm twice during his few weeks at Williamson County Jail and that the Jail had been notified of his previous attempts to self-harm at Franklin County Jail, the Court cannot plausibly infer that it was objectively unreasonable to keep Plaintiff in a cell without objects such as clothing, bedding, and other items which he might otherwise use to harm himself, even with the lower temperatures that can occur in April and May. *See Wood v. Milwaukee Cnty,* 2023 WL 5348344, at *2 (7th Cir. 2023) ("a reasonable factfinder could not find that denying the requests for a blanket and difference cell was objectively unreasonable," while the detainee was on suicide watch and only wearing a smock).

Finally, Count 9 is dismissed as to Plaintiff's claims that he was not allowed recreation, television, and programs and kept in isolation for seventeen days. These deprivations were not so severe given the short duration that they violated the constitution. There is no constitutional right to certain privileges such as television and participation in programming and activities. Additionally, short term denials of exercise and isolation do not violate the constitution, especially in light of Plaintiff's tendency to self-harm by ingesting random objects that he finds.[4]

## Count 10

Plaintiff alleges that Williamson County Jail does not have any mental healthcare providers on staff, and correctional officers do not receive mental health training. (Doc. 68, p. 36). As a

---

[4] The Court notes that despite Plaintiff's claim that he was kept in "extreme isolation," during his seventeen days in the "drunk tank cell," he describes being taken to the shower, various interactions with staff, and a conversation he had with his friend, Jeffrey Watkins. Thus, the fact that he was housed in a cell away from general population and somewhat isolated, does not rise to the level of a constitutional violation.

result, his "mental healthcare needs [were] not properly identified during intake, even though staff was notified of [his] mental health concerns, need[] for in patient hospitalization, and serious mentally ill (SMI) disabilities." He goes on to assert that "no steps [were] taken to ensure [his] required minimally adequate mental health treatments and disability [were] accommodated."

The ADA provides that "no qualified individual with a disability shall, because of that disability…be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2006). "The analysis under the RA, 28 U.S.C. § 794, is essentially the same, except that the RA includes an additional element that requires that the entity denying access receive federal funds." *Shaw v. Kemper,* No. 21-CV-163-JPS, 2021 WL 5493858, at *2 (W.D. Nov. 23, 2021) (citing *Jaros v. Ill. Dep't of Cor*r., 684 F.3d 667, 671–72 (7th Cir. 2012); *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (noting that the ADA and the RA standards are "functionally identical")).

Here, Plaintiff does not claim that he has been "denied access to any service, program, or activity due to" his disability. *Shaw,* 2021 WL 5493858, at *2. Rather, he claims that he did not receive adequate mental health care and was subjected to treatment that exacerbated his condition. A claim that a prisoner has not been properly treated for his mental illness is distinctly different from a claim that he has been denied access to services or programs because he is disabled and is not cognizable under the ADA or RA. *See Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice."); *Rashad v. Doughty*, 4th F. App'x 558, 560 (10th Cir. 2001) (unpublished) ("[C]ontrary to [plaintiff's] assertions, the failure to provide medical treatment to a disabled prisoner, while perhaps raising Eighth Amendment concerns in certain circumstances, does not constitute an ADA violation."); *Resel v. Fox*, 26 F. App'x. 572, 577 (7th Cir. 2001) (unpublished) (holding that "a prison official does not violate the ADA when failing to attend to the medical needs of … disabled prisoners.") (internal quotation

Page 9 of 11

marks and citation omitted). Count 10 will therefore be dismissed.

### State Law Claims: 11-18

The Court will exercise supplemental jurisdiction over Plaintiff's related state law claims. (*See* Doc. 26, p. 11). Counts 11-18 will proceed as pled.

### MOTION TO SUBSTITUTE

Because Plaintiff has filed an amended complaint identifying John Doe 1 as Crompton and and John Doe 3 as Freeman, and no longer naming John Does 2, 4, and 5 as defendants, the Motion to Substitute is **DENIED as moot**. (Doc. 67). In light of the Amended Complaint, the John Doe Defendants are dismissed.

### DISPOSITION

For the reasons stated above, the Motion for Extension of Time to File Amended Complaint is **GRANTED**. (Doc. 66). The Motion for Leave to File an Amended Complaint and the amended complaint are deemed timely filed. The Motion for Leave to File an Amended Complaint is **GRANTED**. (Doc. 69). The Amended Complaint at Doc. 68 is now the operative complaint.

All claims against Nurse Reynolds are **DISMISSED**. **COUNT 1** will proceed against Crompton; **COUNT 2** will proceed against Freeman, Hunter, Pinkerton, Haynes, and Vick; **COUNT 3** will proceed Hunter, Pinkerton, Haynes, and Vick; **COUNT 4** will proceed against Haynes; **COUNT 5** will proceed against Hunter, Pinkerton, Haynes, and Vick; **COUNT 6** will proceed against Hunter, Pinkerton, and Vick; **COUNT 7** will proceed against Hunter, Pinkerton, Haynes, and Vick; **COUNT 8** will proceed against Hunter and Vick in their official capacities; **COUNT 9** will proceed against Hunter, Vick, and Pinkerton; **COUNT 10** is **DISMISSED** in its entirety; **COUNTS 11, 12, 13, and 14** will proceed against Haynes; **COUNTS 15, 16, and 17** will proceed against Hunter, Vick, Haynes, and Pinkerton; and **COUNT 18** will proceed against Hunter, Vick, Haynes, Pinkerton, and Freeman.

The Clerk is **DIRECTED** to **SERVE** Defendants Freeman and Crompton in accordance with the original Merit Review Order at Doc. 26. All Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, defendants need only respond to the issues stated in this merit review order and the original Merit Review Order of the Complaint (Doc. 26).** Defendants are **ADVISED** that the Court does not accept piecemeal answers.

The Motion to Substitute is **DENIED** as moot in light of the Amended Complaint. (Doc. 67).

**IT IS SO ORDERED.**

**DATED:   December 17, 2024**

                    *s/Stephen P. McGlynn*
                    **STEPHEN P. MCGLYNN**
                    **United States District Judge**